## W. H. PIERSON v. THE STATE.

### No. 3708.    Decided December 8, 1915.

**1.—Theft—Affidavit—Assistant County Attorney.**

Where the affidavit was taken by an assistant county attorney, a motion to quash predicated on the theory that he was a deputy and not an assistant, was correctly overruled. Following Dane v. State, 36 Texas Crim. Rep., 84, and other cases. Distinguishing Naill v. State, 59 Texas Crim. Rep., 484.

**2.—Same—Circumstantial Evidence—Charge of Court.**

Where, upon trial of misdemeanor theft, the evidence did not identify the alleged stolen property by positive evidence and the State relied for a conviction on the recent possession of an unidentified can of lard, the failure to charge on circumstantial evidence is reversible error.

**3.—Same—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded upon other grounds, the overruling of a motion for a continuance need not be considered on appeal.

**4.—Same—Evidence—Circumstances—Opportunity.**

Where, upon trial of misdemeanor theft of a can of lard, there was an issue as to the identity of the can of lard alleged to have been found in defendant's possession, the court should have admitted in evidence facts as to the opportunity of defendant's witness for seeing the lard in question if there had been any in that quantity in defendant's house, where it was alleged to have been found, and that witness had never seen that quantity there.

**5.—Same—Ownership—Servant—Employe.**

Where, upon trial of misdemeanor theft, the State introduced testimony to the effect that the alleged owner was the local agent of the railway company, and had control and management of the cars in the railroad yards out of one of which cars the alleged stolen property was taken; the contention that the foreman of the freight warehouse was an agent under said local freight agent and handled some of the trucker cars was a special owner of said alleged stolen property is not well taken, as his employment was more in the nature of a servant or employe under the supervising agency of said local freight agent, and the ownership was therefore properly alleged in said local freight agent.

Appeal from the Criminal District Court of Dallas. Tried below before the Hon. W. L. Crawford, Jr.

Appeal from a conviction of a misdemeanor theft; penalty, a fine of $25 and fifteen days confinement in the county jail.

The opinion states the case.

*McCutcheon & Church,* for appellant.—On question of affidavit taken before assistant county attorney: Naill v. State, 59 Texas Crim. Rep., 484.

On question of court's failure to charge on circumstantial evidence: Smith v. State, 12 S. W. Rep., 869; Montgomery v. State, 20 S. W. Rep., 926; Crowell v. State, 6 S. W. Rep., 318; Eckert v. State, 9 Texas Crim. App., 105.

*C. C. McDonald,* Assistant Attorney General, for the State.

DAVIDSON, Judge.—Appellant was convicted of misdemeanor theft, his punishment being assessed at a fine of $25 and fifteen days imprisonment in the county jail.

Motion was made to quash the affidavit because it was taken by ·Cavin Muse, "assistant county attorney." The theory upon which the motion is predicated seems to be he was a deputy and not an assistant county attorney. The statute provides for an assistant county attorney, article 347, Revised Civil Statutes. It provides that the county attorney shall have power, by consent of the Commissioners Court, to appoint in writing, one or more assistants, not to exceed three, for their respective counties, etc. Under this record it is shown that this affidavit was taken by Cavin Muse, as "assistant county attorney." This statute has been passed on by this court in several cases. See Dane v. State, 36 Texas Crim. Rep., 84; Frank Kelley v. State, 36 Texas Crim. Rep., 480; Wilkins v. State, 33 Texas Crim. Rep., 320. Naill v. State, 59 Texas Crim. Rep., 484, is not in point. The question was not the same. In that case the city attorney was authorized to appoint deputies, and the party who was offered to be bribed was charged to be an assistant. Whether that opinion was correctly decided or not is not necessary to discuss, because the question is not here involved.

Before the argument began appellant requested the court to give a charge on circumstantial evidence, which was refused. In our judgment this charge ought to have been given. The State's testimony, in substance, is that appellant took a can of lard of fifty pounds weight from a car in the yards of the Santa Fe Railway in the City of Dallas. It discloses there was a crate of lard in a box car destined for Gainesville, Texas. The yardmaster testified that he saw it in the car before noon, and it was missing in the afternoon. He found the crate from which the can of lard had been taken somewhere about the yard or on the railroad track in the yard. A witness named Lewis testified that appellant's wife employed him to go down to the depot to bring her some coal. Upon arriving at that point he found appellant and told him his mission. He was directed by the appellant to go to the far end of the platform, which he did. Lewis says he came to the depot, appellant put the can of lard in his dray, as well as several sacks of ·coal. That the can of lard was put under the seat and the coal put in afterwards. By this the idea is sought to be conveyed that the can of lard was so situated in his dray that it could not be seen except from the front. This was done in the yards and in a public manner. Lewis says that he carried a can of lard and the coal to appellant's residence and delivered same to his wife. This was all denied by defendant's testimony, the defendant himself not taking the stand, and his wife did not because she was absent from the county. A continuance was asked for her. A woman was permitted to testify, however, that she was at appellant's house when the drayman came with the load, and that he did not bring or deliver a can of lard. So far as the facts are concerned this is a substantial statement.

Under this view of the testimony we are of opinion that the charge

on circumstantial evidence ought to have been given. The incriminating fact or facts relied upon by the State center in and about the fact that appellant had a can of lard; that he put it in the drayman's dray. Where he got that can of lard is not shown. By circumstances it is shown that the can disappeared from the car, and that appellant later turned over a can of lard to the drayman to carry to his house, which he says he delivered, and other witnesses say he did not. The can of lard was in no way identified as the can that was in the car. Conceding the State's testimony to be as contended, there is nothing either as to the size or marks or anything that indicated that this particular can came out of the car. Had the can been identified, possession is the main incriminating fact relied upon. This is clearly a case of circumstantial evidence, and the court should have given the charge as requested. Possession of an unidentified can of lard by appellant is the State's case as to the taking.

There was a motion made for continuance on account of the absence of the wife. It is more of an equitable than a legal showing. This will not arise upon another trial, and, therefore, is not discussed. The testimony of the wife can be obtained.

A witness introduced by defendant testified that she was in and about appellant's home a great deal, and was familiar with it. He then proposed to carry this further and asked her if while she was around his place did she ever see a fifty-pound can of lard. "How much were you around there?" The assistant county attorney objected and stated, "You can bring 150,000 people here to testify that they didn't see any lard around the kitchen." The court sustained the objection. Appellant's counsel said he wanted to except and for this purpose and to perfect his bill, wanted to ask a few more questions: "What opportunity did you have around there to see any lard, if there had been any (meaning Henry Pierson's house and kitchen kept by himself and wife)?" The assistant county attorney objected again because it was only her opinion as to what opportunity she would have. "Mr. McCutcheon: We except; how much were you there during that time? A. Every day, mornings and evenings, too; I was there in the evening that the man came with the coal; there wasn't a day passed that I was not there." She would have testified had she been permitted that she was there on the day when this coal was brought, which was on the 10th of December, and every day thereafter and had never seen any fifty-pound can of lard there or any can of lard whatever. The court refused to permit this witness to state and detail to the jury the opportunity she had for seeing the lard if there had been any at the place, and appellant excepted. Had he been permitted he could have further proved by witness that she frequently cooked meals at said house for the defendant and his wife; that she frequently ate there; that she spent a great deal of her time there, and had never seen a fifty-pound can of lard at said house nor any lard there in quantities larger than "two bits worth" at a time. Following this up he offered another witness, Sylvia Childress. She did not testify, as the court stated that the witness' negative testimony

would not be admissible, and if permitted she would have testified that on the afternoon of the 10th of December, 1914, she was at the house of the defendant; that she frequently went there and was familiar with the kitchen and the household affairs; that she did not at any time in said house see a fifty-pound can of lard, nor any lard except a very small amount of approximately ten to thirty-five cents worth used for cooking. The court qualifies as follows: "The defendant was permitted to prove by the witness Clementia Bradford that she was around the defendant's kitchen on the 10th day of December; that she was there the afternoon the man came with the coal; that there was not a day passed that she was not there both morning and evening. The witness testified without objection that she had never seen a fifty-pound can of lard around defendant's kitchen." As qualified some of the matters are not objectionable, but this does not cure the error as to the other witness. There was no objection to her testimony except that the court had stated she would not be permitted to testify to these facts. This negative testimony, as it is termed, became very material and was of a cogent nature. Besides, two witnesses being placed in the same relation to the same transaction; one testifies that it occurred, the other testifies he was there and no such thing occurred. This would be, of course, contradictory one of the other, but it certainly would be permissible to show that the witness had every opportunity to see and testify as to the facts in order that the jury may pass upon the question. Such witness had the same opportunity to observe and know the facts. It may be negative in nature, but the force and weight of such testimony is for the jury, and if they conclude he was placed in the same attitude and same relation and had the same opportunity, although it was a denial of the facts stated by the other witness, it would not render the testimony inadmissible. It goes more to the weight than admissibility or competency of the evidence.

The question of ownership became an issue in the case. There was testimony introduced from the State's witnesses to the effect that the alleged owner, being the local agent, had control and management of the cars in the railroad yard. Ownership was alleged in the local freight agent. He had control of the yards and the cars therein. The foreman of the freight warehouse testified he was agent under the local depot agent, and as such had control of what he called the "truckers"; they seem to be hands employed and handled the stuff that came in the cars, taking it out and reloading and matters of that sort, and for that purpose his testimony indicates that he had exclusive control and management as foreman under the depot agent. The case presents itself on close lines, but our opinion is he was more in the nature of a servant or employe under the supervising agency of the local freight agent, who was present in the yards and about the yard and had actual control of all those matters. It is not like one of those cases where the foreman has charge in the absence of the owner. We are of opinion that under the facts here the ownership was properly alleged in the depot freight agent.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*