MEMORANDUM OPINION

No. 04-04-00236-CR

Gary LUTZ,
Appellant

v.

The STATE of Texas,
Appellee

From the 63rd Judicial District Court, Val Verde County, Texas
Trial Court No. 9340
Honorable Thomas F. Lee, Judge Presiding
 
Opinion by:    Karen Angelini, Justice
 
Sitting:            Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
 
Delivered and Filed:   July 6, 2005

AFFIRMED
            Gary Lutz was found guilty of the aggravated sexual assault of his seven-year-old
stepdaughter and was sentenced to sixty years imprisonment and a fine of $5,000. Lutz brings two
issues on appeal: one, that the trial court erred in not granting a continuance to interview a surprise
eye-witness; and two, that the trial court erred in granting the State’s challenge for cause against a
prospective juror simply because the defendant reminded her of her husband. We overrule both
issues and affirm the judgment of the trial court.
Background
            On February 28, 2002, M.L. reported to Officer Hurley of the Del Rio Police Department that
her daughter, O.P., had been sexually assaulted by her stepfather, Gary Lutz. Officer Hurley then
interviewed Lutz. In the interview, Lutz explained that he was separated from his wife, M.L.
According to Lutz, during June and July 2001, while M.L. worked, he babysat her children,
including his stepdaughter, O.P., at an apartment he shared with his girlfriend, Leonora Rios.
            Dr. Larry O’Brien is a pediatrician who examined O.P. on February 27, 2002. According to
Dr. O’Brien’s notes, O.P.’s mother brought her in to be examined after telling her mom that she had
been sexually molested. O.P. told Dr. O’Brien that during the previous summer, Lutz made her put
his privates in her mouth, and he put his privates between her legs and inside her, hurting her. Dr.
O’Brien performed a physical examination on O.P., revealing a well-healed tear in her hymen.
            Over the objection of defense counsel, G.L., a “surprise witness,” was allowed to testify. G.L.
is Lutz’s son and was one of the children Lutz babysat. G.L. testified that while peeking through the
bedroom door, he saw his father, wearing only a tee-shirt and socks, on top of his sister, O.P.,
dressed only in a tee-shirt, doing “nasty stuff.”
            O.P. testified that in the summer when she was seven, her stepfather, Lutz, raped her. She
said he also made her get down on her knees and suck his middle part. 
Surprise Witness
            In his first issue, Lutz argues that the trial court erred in failing to grant defense counsel a
continuance to adequately interview a “surprise” witness. Before the State’s case-in-chief, defense
counsel noted that he had received from the State a supplemented witness list that, for the first time,
included G.L. Noting that the addition of G.L. to the witness list was a surprise, defense counsel
requested a continuance to investigate and interview G.L. The trial court stated that if the State called
G.L., “we’ll just stop and go into that outside the presence of the jury and we’ll get the nature of the
testimony. . . . [W]e’ll just handle that when we get to that point.”
            When the State called G.L. to the witness stand, the trial court asked defense counsel if he
was objecting to the admission of the witness’s testimony. The defense counsel stated,
[W]hen you have a situation like this when the defense attorney alleges surprise, they
are required under the rules, I believe, to ask the court for a continuance and – in
order for us to get an opportunity to see if we can actually speak with the witness, and
that’s what I did do earlier. However, we did go ahead and proceed to trial.

Noting that the jury was out on break, the court stated,
I’m going to allow the child to testify, but I’m going to allow [defense counsel] the
opportunity to at least sit down with you in a room with the child and – so that he
will have an opportunity to ask the child the subject of the testimony so that he can
at least prepare to cross examine this child in the courtroom, and I’ll let you all use
my office for that purpose.

After a recess, the court noted what had happened during the break.
Court: Before we have the jury come in, during the break, I provided the opportunity
to [defense counsel] to talk with this young witness, [G.L.], in my office, and as far
as I know, they were in my office, the Assistant District Attorney was in there with
them, and [defense counsel], you had a chance to talk with this young man, is that
correct?
 
[Defense counsel]: Yes, Your Honor.
 
Court: Okay. We’re ready to proceed.
 
[Defense counsel]: Yes, just for the record, I still want to lodge the same objection
that I have had objecting to this witness testifying.
 
Court: Okay. I’ll overrule the objection and proceed on.
             In his brief, Lutz argues that the trial court should have granted him a continuance longer than
fifteen minutes. Lutz, however, did not file a written, sworn motion for continuance. A motion for
continuance not in writing and not sworn preserves nothing for review. Dewberry v. State, 4 S.W.3d
735, 755-56 (Tex. Crim. App. 1999). Lutz does not argue that he was unable to file such a written
motion. Indeed, the record shows that on the Sunday before trial, the State supplemented its witness
list with G.L.’s name. On Monday, defense counsel read such notification. On Tuesday, defense
counsel orally moved for a continuance. As such, defense counsel had opportunity to file a written
motion. We, therefore, conclude that Lutz has preserved nothing for appellate review. See id.
            Moreover, even if defense counsel’s oral motion was sufficient, after defense counsel was
granted a fifteen-minute recess to interview the witness, he merely stated that he wanted to lodge the
same objection that he had to this witness testifying. To preserve error for appeal, a defendant must
make a specific objection, informing the trial court what he wants, why he thinks himself entitled
to it, and do so clearly enough for the trial court to understand him at a time when the trial court is
in a proper position to do something about it. See Tex. R. App. P. 33.1; Lankston v. State, 827
S.W.2d 907, 909 (Tex. Crim. App. 1992). Here, the trial court could have reasonably believed that
defense counsel sought the exclusion of the witness’s testimony, not that he wanted a longer
continuance, especially as defense counsel was given an opportunity to question the witness during
the recess. After the recess, defense counsel did not object with sufficient specificity. That defense
counsel believed he needed a longer continuance was not apparent from the context. See Heidelberg
v. State, 144 S.W.3d 535, 539-43 (Tex. Crim. App. 2004). Therefore, Lutz waived this issue. See
Tex. R. App. P. 33.1. 
            Additionally, even if this issue was preserved, the trial court did not err in failing to grant a
continuance. We review a trial court’s denial of a motion for a continuance for abuse of discretion.
Wright v. State, 28 S.W.3d 526, 532 (Tex. Crim. App. 2000). In order to establish an abuse of the
trial court’s discretion, an appellant must show that the denial of his motion resulted in actual
prejudice. Id. 
            Here, the trial court allowed Lutz a fifteen-minute recess to interview G.L. Lutz urges in his
brief that he was harmed by receiving only a fifteen-minute recess instead of a longer continuance.
However, Lutz does not explain what length of time would have been sufficient to allow him to
adequately prepare for this witness’s testimony. Additionally, while Lutz argues that this witness
came as a complete surprise, the witness was a minor sibling of the victim O.P. and Lutz’s son, both
of whom Lutz was babysitting at the time of the offense. Furthermore, G.L.’s testimony was
cumulative to that of O.P.’s. Lutz has not shown actual prejudice.
            We overrule Lutz’s first issue. 
Juror Dismissed for Cause
            In his second issue, Lutz argues that the trial court should not have granted the State’s
challenge for cause against a prospective juror simply because the defendant reminded her of her
husband. A party may challenge for cause a veniremember who has a bias or prejudice against any
phase of the law upon which the State is entitled to rely for conviction or punishment. Tex. Code
Crim. Proc. Ann. art. 35.16(b)(3) (Vernon Supp. 2004-05).
            To show error in the trial court’s grant of the State’s challenge of a veniremember for cause,
an appellant “must demonstrate one of two things: (1) the trial judge applied the wrong legal
standard in sustaining the challenge, or (2) the trial judge abused [his] discretion in applying the
correct legal standard.” Jones v. State, 982 S.W.2d 386, 388-89 (Tex. Crim. App. 1998) (citations
omitted). We must uphold the trial court’s decision if it was correct under any theory of law
applicable to the case, even if the trial court gave an incorrect reason for its decision. Id. 
            Here, Veniremember Two stated that her deceased husband had been “accused of the same
thing” as Lutz. Veniremember Two stated, “The mother of the child was accusing him.” According
to Veniremember Two, she did not believe that she could be fair, because when she looked at Lutz,
she saw her “husband sitting there”: “I can see [my husband], you know, that he would probably be
going through the same thing and the trial if he hadn’t passed away.” When asked if she felt her
experience with her husband would affect her ability to be fair in this case, Veniremember Two
stated, “I would rather not be involved.” The State challenged Veniremember Two for cause, arguing
that she was prejudiced against the State because of her experiences with the accusations against her
late husband. The trial court granted the challenge because “she has a direct past incident involving
the same kind of a situation.” However, the trial court stated that it was “a very close call,” and noted
that the critical issue was whether the juror could rule on the evidence regardless of personal
feelings. Neither party nor the court directly asked Veniremember Two whether she could follow the
law without bias or prejudice.
            When a veniremember vacillates or equivocates on his or her ability to follow the law, we
must defer to the trial court’s judgment. Brown v. State, 913 S.W.2d 577, 580 (Tex. Crim. App.
1996). Here, the trial court said it was “a close call.” The trial court was in the best position to listen
to Veniremember Two’s testimony and decide if she could follow the law. We find no error on the
part of the trial court.
            Lutz argues that excusing this potential juror is tantamount to excluding all victims of crimes
from serving on juries. We disagree. The issue here is whether a trial court erred in dismissing this
juror for cause because she waivered on her ability to follow the law. One factor in that decision was
whether her personal experience involving a similar incident could influence her ability to follow
the law. Lutz cites Murray v. State, 689 S.W.2d 247 (Tex. App.—Corpus Christi 1985, pet. ref’d),
in support of his position. However, the facts in that case are distinguishable. In Murray, the issue
was whether a trial court erred in denying a challenge for cause. Id. at 250. In the instant case, Lutz
is not arguing that he was forced to exhaust his peremptory challenges and, as such, accept a juror
whom he found objectionable, but that he was denied the opportunity to have a qualified
veniremember seated. See id. at 250-51. 
            Lutz further argues that the trial court’s ruling effectively gave the state an additional
peremptory challenge. However, in Jones v. State, 982 S.W.2d 386, 393 (Tex. Crim. App. 1998),
the court of criminal appeals explained the flaw in this reasoning. According to the court,
Challenges for cause go to legal qualifications of jurors, whereas peremptory
challenges are used to eliminate jurors who are thought (or felt) to be undesirable on
a partisan evaluation. A juror’s disqualification is not related to the juror’s
desirability. It is especially wrong to equate the State’s challenge for cause to a
peremptory challenge, because the State has the right to challenge disqualified jurors
even when their disqualifications might seem to make them favor the State.

Id. at 393-94.
            Additionally, even if the trial court had erred in striking Veniremember Two for cause,“the
erroneous excusing of a veniremember will call for reversal only if the record shows that the error
deprived the defendant of a lawfully constituted jury.” Ford v. State, 73 S.W.3d 923, 925 (Tex. Crim.
App. 2002) (quoting Jones, 982 S.W.2d at 394). According to the court of criminal appeals, “[t]his
holding should be read in light of the right that is ordinarily at stake in challenges for cause: that the
jurors who serve be qualified.” Id. There is no right to have any particular person on the jury. Id.
Indeed, according to the court of criminal appeals, “trial courts should follow a policy of liberally
granting challenges for cause.” Id. Thus, the “erroneous granting of a challenge for cause . . . will
not result in harm to the defendant so long as the jury actually selected was composed of qualified
persons.” Id. And, we presume that jurors are qualified absent some indication in the record to the
contrary. Id. “In essence, the record shows that the defendant is not harmed by such an error when
it contains no indication that those who served on the jury were unfit for duty.” Id. Here, there is no
indication in the record that those who served on the jury were unfit. As such, any error committed
by the trial court was not harmful.
            We overrule Lutz’s second issue.  
Conclusion
            Having overruled both issues, we affirm the judgment of the trial court. 
 
Karen Angelini, Justice

Do not publish